UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| **JUBILANT GENERICS LIMITED,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | 2:23-cv-00237-JDL |
| ) | |
| **DECHRA VETERINARY** ) | |
| **PRODUCTS, LLC,** ) | |
| ) | |
| **Defendant.** ) | |

## ORDER ON PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIM AND COMPEL ARBITRATION

Plaintiff Jubilant Generics Limited ("Jubilant") filed a Complaint on June 7, 2023 (ECF No. 1), against its former business partner, Defendant Dechra Veterinary Products, LLC ("Dechra"). Dechra filed an Answer and Counterclaim, on August 4, 2023 (ECF No. 30). Jubilant subsequently filed a Motion to Dismiss Defendant's Counterclaim and Compel Arbitration (ECF No. 34; "the Motion"). In the Motion, Jubilant argues that the parties previously entered into a binding agreement requiring Dechra's counterclaims to be arbitrated. Jubilant contends that its own claims are properly decided by the Court because they are exempted from the parties' arbitration agreement, so the Motion seeks to compel arbitration of Dechra's counterclaims only. For the reasons that follow, I grant Jubilant's request to compel arbitration, but I deny the Motion in part because I conclude that the counterclaims should be stayed pending arbitration rather than dismissed at this time.

1

## I.  BACKGROUND

Plaintiff Jubilant is a pharmaceutical company based in India that specializes in the development, manufacturing, and supply of generic drugs.  Defendant Dechra is a veterinary pharmaceutical company based in the United States that develops, manufactures, and distributes animal health products.  Jubilant and Dechra were business partners for a number of years.

To facilitate their business partnership, the parties[1] entered into two agreements that are relevant to this case: a Confidentiality Agreement executed on January 18, 2007 (the "Confidentiality Agreement"), and a Licensing and Supply Agreement executed on December 10, 2007 (the "Agreement").[2]  Under the Agreement, Jubilant agreed to manufacture an antibiotic tablet used to treat animals ("the product"), and Dechra agreed to obtain regulatory approval and sell the product in the United States.

The Agreement contains an arbitration provision.  Section 14 of the Agreement, titled "Arbitration" (the "arbitration provision"), provides in part that, "[e]xcept for any violation of any obligation under Section 10, all Disputes relating in any way to this Agreement shall be resolved exclusively through arbitration conducted in accordance with the arbitration rules of the International Chamber of

---

[1]  Technically, Jubilant and Dechra are successors to the entities that executed the Confidentiality Agreement and the Licensing and Supply Agreement.

[2]  Jubilant asserts that the Agreement was amended on March 28, 2018.  The parties have attached to their pleadings slightly different versions of the Agreement.  *Compare* ECF No. 1-1, *with* ECF No. 30-1.  Those differences are not consequential here.

Commerce as then in effect."[3] ECF No. 1-1 at 20; ECF No. 30-1 at 38. Section 10, in turn, is titled "Confidentiality" and governs the use, disclosure, and return of "Confidential Information," ECF No. 1-1 at 14-16; ECF No. 30-1 at 26-28, defined elsewhere in the Agreement as "all scientific, manufacturing, technical, clinical, regulatory, financial, pricing, commercial, sales, marketing, customer and other information and data related to any of the Product, the [active pharmaceutical ingredient], or to the objects of this Agreement, whether disclosed orally or in Documents," ECF No. 1-1 at 3; ECF No. 30-1 at 3. The Confidentiality Agreement does not mention arbitration.

The parties' business arrangement eventually broke down, after which Jubilant initiated this civil action against Dechra. Jubilant asserts the following claims in its Complaint: (1) breach of contract (Count I); (2) misappropriation of trade secrets in violation of the Maine Uniform Trade Secrets Act, 10 M.R.S.A. §§ 1541-1548 (West 2024) (Count II); (3) violation of the federal Defend Trade Secrets Act, 18 U.S.C.A. § 1836 (West 2024) (Count III); and (4) an action for replevin relating to Jubilant's confidential information (Count IV). Count I alleges that Dechra breached the Agreement and the Confidentiality Agreement by impermissibly retaining, using, and disclosing Jubilant's Confidential Information. Counts II and III allege that Jubilant's Confidential Information is a trade secret, and Dechra's continued use of and failure to return the Confidential Information violates state and federal trade secrets laws. Count IV requests a court order requiring Dechra to return and stop

---

[3] Because the parties have provided slightly different versions of the Agreement, *supra* note 2, I have cited to the relevant language in both attachments where appropriate.

3

interfering with Jubilant's Confidential Information, and to compensate Jubilant for damages.

Dechra, in response, asserts the following counterclaims against Jubilant: (1) breach of contract (Count I); (2) an alternative breach of contract claim (Count II); (3) a request for declaratory judgment (Count III); and (4) a request for attorney's fees (Count IV).  Count I alleges that Jubilant willfully and materially breached the Agreement by failing to supply the product, not following good manufacturing practices, providing adulterated drugs, failing to support a required technology transfer, and failing to indemnify Dechra for costs arising from the breach.  In the alternative, Count II alleges that Jubilant breached the Agreement by failing to supply the product, refusing to pay the cost of a replacement drug, and failing to reimburse Dechra for costs related to the technology transfer.  Count III requests a declaration that Dechra owns the regulatory approval for the product and all rights flowing from that approval including, but not limited to, commercializing the approval, selling the product in the United States, and selling the approval to a different pharmaceutical company for potential commercialization.  Count IV requests attorney's fees.

## II.  DISCUSSION

A.  **Legal Standard: Motion to Compel Arbitration**

Jubilant seeks to compel arbitration of Dechra's counterclaims under the Federal Arbitration Act ("FAA"), 9 U.S.C.A. §§ 1-16 (West 2024).  The FAA provides in part:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

*Id.* § 4.  "In deciding a motion to compel arbitration, a court must ascertain whether: '(i) there exists a written agreement to arbitrate, (ii) the dispute falls within the scope of that arbitration agreement, and (iii) the party seeking an arbitral forum has not waived its right to arbitration.'"  *Gove v. Career Sys. Dev. Corp.*, 689 F.3d 1, 4 (1st Cir. 2012) (quoting *Combined Energies v. CCI, Inc.*, 514 F.3d 168, 171 (1st Cir. 2008)).  Jubilant argues, and Dechra acknowledged at oral argument, that the parties have a valid written agreement to arbitrate certain disputes and that Dechra's counterclaims fall within the scope of that agreement.  The parties disagree, however, about whether Jubilant has waived its right to compel arbitration of Dechra's counterclaims.  Thus, the key questions here center on waiver and who—the Court or the arbitrator—should decide the arbitration-related disagreements that the Motion presents.

B.  **Waiver**

   **1. Whether the Court or the Arbitrator Decides Waiver**

Before I consider the merits of the parties' waiver arguments, there is a threshold question to resolve: Who decides whether Jubilant has waived its right to compel arbitration? "Where ordinary contracts are at issue, it is up to the parties to determine whether a particular matter is primarily for arbitrators or for courts to decide." *BG Grp., PLC v. Republic of Argentina*, 572 U.S. 25, 33 (2014). If an agreement does not explain who decides a particular issue, "courts determine the parties' intent with the help of presumptions." *Id.* at 34. Distinct presumptions apply to questions of "arbitrability" and questions of waiver:

> On the one hand, courts presume that the parties intend courts, not arbitrators, to decide what we have called disputes about "arbitrability." These include questions such as whether the parties are bound by a given arbitration clause, or whether an arbitration clause in a concededly binding contract applies to a particular type of controversy. . . .
>
> On the other hand, courts presume that the parties intend arbitrators, not courts, to decide disputes about the meaning and application of particular procedural preconditions for the use of arbitration. These procedural matters include claims of waiver, delay, or a like defense to arbitrability.

*Id.* at 34-45 (internal quotation marks and citations omitted).

Thus, ordinarily it is presumed that an arbitrator decides questions of waiver. However, the First Circuit has held that this presumption "did not intend to disturb the traditional rule that waiver by conduct, at least where due to litigation-related activity, is presumptively an issue for the court." *Marie v. Allied Home Mortg. Corp.*, 402 F.3d 1, 14 (1st Cir. 2005); *accord Cutler Assocs., Inc. v. Palace Constr., LLC*, 132 F. Supp. 3d 191, 199 (D. Mass. 2015) ("[W]hether or not a party has waived its right

to arbitrate by litigation conduct is a question for the court, not the arbitrator."). In particular, "[w]here the alleged waiver arises out of conduct within the very same litigation in which the party attempts to compel arbitration or stay proceedings, then the district court has power to control the course of proceedings before it and to correct abuses of those proceedings." *Marie*, 402 F.3d at 13.

Here, the parties' waiver arguments turn on Jubilant's litigation-related conduct in this very proceeding. Dechra argues that Jubilant waived its right to compel arbitration because Jubilant brought arbitrable claims in its Complaint. Thus, under Dechra's theory, Jubilant engaged in litigation conduct inconsistent with its purported desire to enforce the parties' arbitration agreement. That conduct, according to Dechra, implicitly waived Jubilant's right to compel arbitration. Jubilant, on the other hand, argues that its conduct in this case has been consistent with its desire to compel arbitration of Dechra's counterclaims because the claims it brought in its Complaint, unlike the counterclaims, are exempted from the Agreement's arbitration requirement. *Marie* makes clear that it is presumptively proper for the Court, not an arbitrator, to evaluate alleged waiver that stems from litigation conduct in the particular action before the Court.

The evidence in this case does not overcome the presumption that the Court should decide questions of litigation-related waiver. "A shifting of the issue to the arbitrator will only be found where there is 'clear and unmistakable evidence' of such an intent in the arbitration agreement." *Marie*, 402 F.3d at 14 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). To be sure, I agree with Jubilant that the parties' arbitration provision requires issues of "arbitrability" to be decided

7

by an arbitrator.[4]  However, as I have explained, the issue of who decides "arbitrability" is distinct from the issue of who decides waiver.  The parties' intent to have the arbitrator decide questions of arbitrability does not constitute "clear and unmistakable evidence" of an intent to have the arbitrator decide litigation-related waiver.  For example, the *Marie* Court concluded that an agreement to submit "the arbitrability of any such controversy or claim" to the arbitrator did not "evince[] a clear and unmistakable intent to have waiver issues decided by the arbitrator."  402 F.3d at 15.  Jubilant cites *In re Intuniv Antitrust Litig.*, to support its position that the arbitrator should decide the scope of the arbitration provision, but even that case involved the Court deciding whether litigation-related waiver had occurred.  No. 1:16-CV-12653-ADB, 2021 WL 517386, at *8, *12 (D. Mass. Feb. 11, 2021) (concluding that defendant's litigation conduct did not constitute waiver of its right to compel arbitration).  Thus, although the parties here have agreed to submit questions of arbitrability to the arbitrator, that alone does not constitute "clear and unmistakable

---

[4] "[A] court 'should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so.'"  *Patton v. Johnson*, 915 F.3d 827, 835 (1st Cir. 2019) (quoting *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 532 (2019)).  The First Circuit has concluded that this "demanding" standard, *id.*, is satisfied when the parties agree to arbitrate pursuant to the American Arbitration Association ("AAA") rules, *Awuah v. Coverall N. Am., Inc.*, 554 F.3d 7, 9-11 (1st Cir. 2009); *see also Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013) ("Virtually every circuit to have considered the issue has determined that incorporation of the [AAA's] arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." (citing decisions of the Second, Fifth, Eighth, Eleventh, and Federal Circuits)).

Here, the parties' agreement adopts the International Chamber of Commerce ("ICC") arbitration rules, which include language similar to that in the AAA rules.  *See In re Intuniv Antitrust Litig.*, No. 1:16-CV-12653-ADB, 2021 WL 517386, at *5 (D. Mass. Feb. 11, 2021) ("The ICC's rules, like the AAA's, give the arbitrator the authority to decide arbitrability."); *Apollo Comput., Inc. v. Berg*, 886 F.2d 469, 473 (1st Cir. 1989) (finding clear and unmistakable evidence of arbitrator's authority to decide her own jurisdiction where parties agreed to then-effective version of ICC rules).  Thus, the parties here have agreed to have the arbitrator decide questions about the scope of the arbitrability provision.

evidence" to overcome the presumption that the Court decides waiver based on litigation conduct.

### 2. Whether Jubilant Waived Its Right to Compel Arbitration

"Like any other contract right, the right to arbitrate may be waived either explicitly or through an implicit course of conduct." *Toddle Inn Franchising, LLC v. KPJ Assocs., LLC*, 8 F.4th 56, 64 (1st Cir. 2021). To evaluate whether a party has waived its right to compel arbitration, the First Circuit considers several factors:

> (1) [W]hether the parties participated in a lawsuit or took other action inconsistent with arbitration; (2) whether the "litigation machinery has been substantially invoked and the parties [are] well into preparation of a lawsuit by the time an intention to arbitrate [is] communicated"; (3) "whether there has been a long delay" and trial is near at hand; (4) whether the party seeking to compel arbitration has "invoked the jurisdiction of the court by filing a counterclaim"; [and] (5) whether discovery not available in arbitration has occurred . . . .[5]

*FPE Found. v. Cohen*, 801 F.3d 25, 29 (1st Cir. 2015) (quoting *Restoration Pres. Masonry, Inc. v. Grove Eur. Ltd.*, 325 F.3d 54, 61 (1st Cir. 2003)). "[N]o one factor dominates the analytical framework for determining whether a party has implicitly waived its right to arbitrate." *In re Citigroup, Inc.*, 376 F.3d 23, 26 (1st Cir. 2004). The key consideration is whether the party "knowingly relinquish[ed] the right to arbitrate by acting inconsistently with that right." *Morgan*, 596 U.S. at 419.

---

[5] The First Circuit previously required parties asserting waiver to show prejudice. *See, e.g.*, *FPE Found. v. Cohen*, 801 F.3d 25, 31 (1st Cir. 2015). The Supreme Court has since explained that the federal waiver inquiry does not include a prejudice requirement. *Morgan v. Sundance, Inc.*, 596 U.S. 411, 416 & n.1, 419 (2022) (abrogating *Joca-Roca Real Est., LLC v. Brennan*, 772 F.3d 945 (1st Cir. 2014)). *Morgan* clarified that courts are not permitted to "create arbitration-specific variants of federal procedural rules, like those concerning waiver, based on the FAA's 'policy favoring arbitration.'" *Id.* at 417. Even after *Morgan*, the party asserting waiver has the burden to show that the other party waived its right to compel arbitration. *Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1014-15 (9th Cir. 2023) ("Although the party opposing arbitration still bears the burden of showing waiver, the burden is no longer 'heavy.' Instead, the burden for establishing waiver of an arbitration agreement is the same as the burden for establishing waiver in any other contractual context.").

Dechra argues that Jubilant's Complaint contains arbitrable claims, so Jubilant has waived its right to compel arbitration by filing this federal action. The Agreement exempts alleged violations of obligations under Section 10—the portion of the Agreement that addresses "Confidentiality"—from the parties' promise to arbitrate. Dechra acknowledges this carve-out but contends that Jubilant's claims extend far beyond Section 10 by, *inter alia*, asserting legal theories and seeking remedies not contemplated by that provision. Thus, Dechra argues that Jubilant's claims were subject to the arbitration requirement, and Jubilant implicitly waived its right to compel arbitration when it chose to litigate this case in federal court. For reasons I will explain, I disagree and conclude that Jubilant's claims are not subject to the Agreement's arbitration requirement.[6]

The first count in Jubilant's Complaint is for breach of contract. Jubilant alleges that Dechra breached both the Agreement and the Confidentiality Agreement by improperly using, retaining, and sharing content that Jubilant contends is "Confidential Information." In other words, Jubilant alleges that Dechra has violated its obligations as to confidentiality, which is exactly the sort of violation that would

---

[6] I note that the distinction between questions of "waiver" (for the Court to decide) and "arbitrability" (for the arbitrator to decide) is muddled here: Dechra argues that Jubilant's litigation-related conduct resulted in waiver, but Dechra's theory turns on whether Jubilant brought claims that fall within the arbitration requirement. Because I conclude that the Court decides whether Jubilant waived its right to compel arbitration through its litigation-related conduct, I consider the arbitrability of certain claims for the narrow purpose of evaluating the parties' waiver arguments.

If the Court did not consider the scope of the arbitration provision at all, the ultimate result would be the same. Dechra has the burden to show that Jubilant waived its right to compel arbitration; the only argument it advances on that point is that Jubilant brought arbitrable claims in its Complaint. If the Court cannot consider whether Jubilant's claims are actually arbitrable, it cannot, by the same token, determine that Dechra has met its burden to show waiver. Thus, regardless of whether the Court considers the scope of the arbitration provision, Dechra cannot, on the theory it advances, show that Jubilant waived its right to compel arbitration, and Jubilant's request to compel arbitration should be granted.

fall under Section 10 of the Agreement. Although the breach-of-contract claim also alleges violations of the Confidentiality Agreement, that is a separate instrument, and it is silent on arbitration. The Agreement's arbitration provision merely requires the parties to arbitrate "all Disputes relating in any way to this Agreement," ECF No. 1-1 at 20; ECF No. 30-1 at 38, and I am not persuaded that alleged violations of the Confidentiality Agreement relate to the separate, later Agreement. Thus, Jubilant's breach-of-contract claim is not subject to the arbitration requirement.

I similarly conclude that the other claims in Jubilant's Complaint are not subject to the Agreement's arbitration requirement. Jubilant asserts violations of state (Count II) and federal (Count III) trade secrets laws, and also asserts a replevin claim (Count IV) seeking the return of Jubilant's Confidential Information. As pleaded by Jubilant, these claims are premised on the same core concern: Jubilant alleges that Dechra has violated its obligations with respect to the use and disclosure of Confidential Information, and Jubilant argues that it is entitled to various remedies as a result. As I have previously explained, the Agreement's arbitration requirement expressly excludes "any violation of any obligation under Section 10" of the Agreement, relating to confidentiality. Although Jubilant's claims involve legal theories and remedies that are not mentioned in Section 10, the claims center on a dispute about how Dechra has handled confidential information. Thus, if these claims relate to the Agreement at all, they are the sort of disputes that have been exempted from the arbitration requirement. If, as Dechra seems to suggest, Jubilant brings claims that are completely disconnected from the Agreement, those claims do

11

not "relat[e] in any way" to the Agreement and do not trigger the arbitration provision in the first place. ECF No. 1-1 at 20; ECF No. 30-1 at 38.

In sum, I conclude that the claims in Jubilant's Complaint are not subject to the parties' promise to arbitrate. To the extent that Jubilant's claims "relat[e] in any way to th[e] Agreement," they allege violations of Section 10 and are exempted from the arbitration requirement. To the extent Jubilant's claims involve the Confidentiality Agreement or other obligations that are unrelated to the Agreement, they do not fall within the scope of the Agreement's arbitration requirement. Because Jubilant did not bring arbitrable claims in its Complaint, Dechra's waiver argument—that Jubilant waived its right to compel arbitration by bringing claims that were subject to the arbitration provision—fails.

Beyond the alleged arbitrability of Jubilant's original claims, Dechra has not cited other litigation conduct to support its waiver argument. Indeed, Jubilant filed its Motion to Compel Arbitration promptly after Dechra brought its counterclaims; Jubilant has consistently taken the position that Dechra's counterclaims are arbitrable, whereas Jubilant's claims are not. Thus, Dechra cannot show that Jubilant "knowingly relinquish[ed] the right to arbitrate" through its litigation conduct. *Morgan*, 596 U.S. 411 at 419.

Dechra notes that splitting the case between two forums could be impractical, inefficient, or result in inconsistent verdicts, but those concerns do not blunt the force of the Agreement's arbitration requirement. The FAA "*requires* piecemeal resolution when necessary to give effect to an arbitration agreement." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 (1983). "[W]hen a complaint contains

12

both arbitrable and nonarbitrable claims, the Act requires courts to 'compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums.'" *KPMG LLP v. Cocchi*, 565 U.S. 18, 22 (2011) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217 (1985)). Here, the Agreement's arbitration requirement includes an explicit, unambiguous carve-out for violations of Section 10. Inherent in that requirement is the idea that some disputes are subject to arbitration, and some are not. The Agreement's arbitration provision requires the claims to be split between forums, even if the result is inefficient.

## C.     Dismissal or Stay

Jubilant requests that the Court dismiss Dechra's counterclaims, but the parties' briefing is sparse on this issue. Where a case involves arbitrable claims, the FAA ordinarily contemplates that those claims will be stayed pending arbitration:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C.A. § 3. Although "a court may dismiss, rather than stay, a case when all of the issues before the court are arbitrable," *Bercovitch v. Baldwin Sch., Inc.*, 133 F.3d 141, 156 n.21 (1st Cir. 1998), that is not the case here. As I explained earlier, this action involves a mix of arbitrable and nonarbitrable claims. Even though I conclude

that the counterclaims must proceed to arbitration, I am not persuaded that the counterclaims should be dismissed entirely at this stage, while Jubilant's claims proceed in this Court. Jubilant has not cited to any authority to support its request for dismissal. Thus, I will stay the counterclaims pending the completion of arbitration.

### III.  CONCLUSION

It is accordingly **ORDERED** that the Motion to Dismiss Defendant's Counterclaim and Compel Arbitration (ECF No. 34) is **GRANTED IN PART and DENIED IN PART**. The request to compel arbitration as to the counterclaims is **GRANTED** and it is **ORDERED** that arbitration shall proceed in the manner provided for in the Agreement. The case is **STAYED** in this Court only as to the counterclaims in the Answer (ECF No. 30). The case will otherwise proceed in this Court as to the claims in the Complaint (ECF No. 1).

**SO ORDERED.**

Dated:  March 28, 2024

/s/ JON D. LEVY
**U.S. DISTRICT JUDGE**
